IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| KEN ROBERTS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:15-cv-00739-REP-RCY |
| | ) |
| IMMIGRATION CENTER OF | ) |
| AMERICA, LLC, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendants, Immigration Center of America, LLC ("ICA"), and Jeffery Crawford, Rebecca Jackson, Russell B. Harper, Ken Newsome, Warren Coleman, Robert Wooten, Douglas Kingery, and Mabel Logan (the "ICA Individual Defendants")(ICA and the ICA Individual Defendants, collectively, "Defendants"), by counsel, in response to the Complaint filed by Ken Roberts ("Roberts" or "Plaintiff"), state as follows for their Memorandum in Support of Motion to Dismiss for Failure to State a Claim:

**INTRODUCTION**

Roberts, proceeding *pro se* and *in forma pauperis*, challenges his conditions of confinement and seeks injunctive relief and damages, asserting that Defendants have violated his civil rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Relying on 42 U.S.C. § 1983 and the Fourteenth Amendment, Roberts contends that the Defendants have i) violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment and by deliberate indifference to his safety; ii) violated his right to equal protection and due process under the Fourteenth Amendment; and iii) violated his right to free exercise of religion

under the First Amendment. For the following reasons, these claims, as well Robert's claim under RLUIPA, fail to state a claim upon which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS[1]

The Complaint identifies ICA as "a local Contracted Detention Facility for illegal immigrants in Farmville, Virginia, under a contract with the United States Immigration and Customs Enforcement." (Compl. ¶ 11.) It further explains that, "[i]n its capacity as a local Contracted Detention Facility unit, it has implemented, executed and adopted the policies, practices, acts, and omissions complained of herein through formal adoption or pursuant to facility and governmental custom." (*Id.*) The Complaint then identifies each of the other Individual ICA Defendants as employees, investors, or owners of ICA. (*Id.* ¶¶ 13-18.) In conclusory fashion, Roberts then states that "[t]he *defendants* have actual or constructive knowledge of the policies, performance base national detention standards, practices, acts, and omissions complained of herein. All of the policies, practices, acts, and omissions complained of herein are intentional policies, practices, acts, and omissions of the *defendants*." (*Id.* ¶ 19 (emphasis added).)

Without further elucidation, Plaintiff complains that "Defendants have promulgated a policy that Plaintiff must only receive two rolls of toilet tissue paper a week," and that such a policy amounts to "cruel and unusual" punishment. (*Id.* ¶ 27.) Plaintiff alleges that he was placed in the custody of ICA on May 27, 2015, that he "declared his faith as Judaism" during "intake," and that "on or about June 8, 2015, Plaintiff sought to be provided kosher meals," and that "on or about June 15, 2015, Plaintiff was interviewed and established his faith to be that of Judaism by Defendant

---

[1] Although Defendants intend to dispute many of the allegations in the Complaint, they are accepted as true solely for the purposes of this Motion to Dismiss. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004).

Chaplain Robert Wooten." (*Id.,* ¶¶ 24-25; 36-38.) Plaintiff acknowledges that he was placed on a "common fare meal" on or about June 25, 2015. (*Id.*, ¶ 38.) Next, Plaintiff contends that ICA has a contractual obligation to the Department of Homeland Security to comply with the Performance Based National Detention Standards ("PBNDS") and that Defendant Wooten is not in compliance with such standards regarding "kosher-frozen food entrees," because "nowhere does it mention allowance for Trinity Food group to cook Kosher meals." (*Id.*, at ¶ 39). Finally, Plaintiff asserts that Defendant, Chaplain Wooten, has failed to comply with PBNDS regarding the development of the ceremonial meal schedule for the subsequent calendar year, and with respect to having "standard Kosher-for-Passover foods available for Jewish detainees during the eight-day holiday." (*Id.*, at ¶ 41-42.)

Without explanation, Roberts also alleges that Defendants "fail to utilize an adequate classification system for Plaintiff, "fail to hire staff with adequate qualifications," "fail to provide adequate pre-employment or in-service training for staff at the facility," and that, as a result, the staff is "unable to adequately protect Plaintiff['s] constitution rights." (*Id.* ¶¶ 30-34.) Based apparently on such alleged failures, his confinement is "dangerous, punitive, and unlawful," he "continue[s] to suffer a serious disregard for safety," and he "continue[s] to suffer serious psychological and emotional injuries." (*Id.* ¶¶ 33-35.)

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . .

. claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not assert "detailed factual allegations," it must nevertheless contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)). To that end, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation and internal quotation marks omitted). At the same time, courts recognize that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Orthmann v. Apple River Campground*, 757 F.2d 909, 915 (7th Cir. 1985); and *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)). "[W]hile the Court liberally construes pro se complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of

his complaint. *Lewis v. Beach*, 2012 U.S. Dist. LEXIS 105308 (E.D. Va. July 26, 2012), aff'd, 2013 U.S. App. LEXIS 6500 (4th Cir. Apr. 1, 2013).

## ARGUMENT

**A.     Plaintiff's constitutional claims fail to state a claim upon which relief may be granted.**

<u>1. There is no state action to support a claim under 42 U.S.C. § 1983 or the 14th Amendment.</u>

Plaintiff alleges that on May 27, 2015, he was detained by the Department of Homeland Security ("DoHS"), and placed in the custody of ICA by the DoHS. (Compl. ¶¶ 23-24.) Plaintiff further alleges that ICA "operates a detention center for illegal immigrants in Farmville, Virginia, under a contract with [DoHS], that he was detained at ICA's facility at the time this action was filed, and that his claims arise out of the conditions of his confinement at ICA's facility. (Compl. ¶¶ 1, 9, 22.) Plaintiff also pleads that each of the Individual ICA Defendants are employees or investors / owners of ICA. (Compl. ¶¶ 13-18.)

Plaintiff does not allege any state action, or action under color of state law. Indeed, his allegations are that ICA is a private entity, under contact with the federal government, and that the Individual ICA Defendants are employees of a private entity, not the state or federal government. Accordingly, Plaintiff's Complaint establishes the *absence* of state action, or action under color of state law, and his claims under 42 U.S.C. § 1983 and the 14th Amendment fail as a matter of law.

<u>2. Plaintiff cannot assert a *Bivens* claim.</u>

To the extent the Court will treat Roberts' allegations as asserting an implied action for violation of his rights under color of federal law pursuant to *Bivens*, such claims would also fail as a matter of law and must be dismissed.

      a.     *No Bivens claim is available against, ICA, a private entity*.

In 2001, the Supreme Court of the United States resolved a split of authority among the Courts of Appeals and held that no *Bivens* action can be maintained against a private entity. *See Correctional Services Corporation v. Malesko,* 534 U.S. 61, 66, n. 2 ("The Courts of Appeals have divided on whether *FDIC v. Meyer* … foreclosures the extension of *Bivens* to private entities… We hold today that it does."). In *Malesko* a former federal inmate was transferred by the federal Bureau of Prisons ("BOP") to a halfway house operated by Correctional Services Corporation ("CSC") under a contract with the BOP. *Malesko*, 534 U.S. at 63-64. The District Court, treating the Plaintiff's complaint as asserting a *Bivens* claim, and relying on *FDIC v. Meyer*, 510 U.S. 471 (1994), "reasoned that 'a Bivens action may only be maintained against an individual,' and thus was not available against [CSC], a corporate entity." *Id.*, 534 U.S. at 65. The Court of Appeals for the Second Circuit reversed the District Court's decision, and the Supreme Court granted certiorari. *Id.*, at 65-66. In reversing the Court of Appeals, the Supreme Court emphasized that the "purpose of *Bivens* is deter individual federal officers from committing constitutional violations[,] and that "*Meyer* also made clear that the threat of a suit against an individual's employer was not the kind of deterrence contemplated by Bivens." *Id.*, at 70 (citing *Meyer*, 510 U.S. at 485).

Thus, ICA, like CSC, is a private entity that is not subject to liability under *Bivens*. Accordingly, to the extent the Court treats Roberts' constitutional claims against ICA as *Bivens* claims, each is barred by *Malesko* and must be dismissed.

      b. *No Bivens claim is available against the Individual ICA Defendants*.

In 2012, the Supreme Court of the United States resolved a split of authority among the Courts of Appeals to decide "whether we can imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison." *Minneci v. Pollard*, 132 S. Ct. 617 (2012). In *Minneci*, Roy Lee Pollard, a federal prisoner at a prison

6

operated by Wachenhut Corrections Corporation, asserted a claim for damages against several individual employees of Wachenhut, contending that they deprived him of adequate medical care and subjected him to cruel and unusual punishment in violation of his Eight Amendment rights. *Minneci*, 132 S. Ct. at 620. After summarizing its unwavering refusal to expand the scope of *Bivens* actions in each case presented to it since 1980, the Supreme Court refused to recognize a *Bivens* claim against the employees of Wachenhut on the facts presented. *Id*., at 626.

In reaching this conclusion, the Court rejected Pollard's arguments i) that allowing *Bivens* claims against private prison employees was not a significant extension of existing authority that allowed *Bivens* claims against employees of the federal government working in prisons; ii) that due to the vagaries of state tort law, the Court should consider whether the plaintiff had an adequate remedy under federal law; iii) that available state remedies did not protect the constitutional interests at issue; and iv) that there may be similar kinds of Eighth Amendment claims that state tort law does not cover. *Id*., at 623-626. With respect to Pollard's arguments that he had no adequate alternative remedy, the Court explained that it "has implied a *Bivens* action only where an alternative remedy against individual officers was 'nonexistent' or where plaintiff 'lacked *any alternative* remedy' at all." *Id*. at 624 (citing *Malesko,* 534 U.S. at 70)(emphasis in original). Moreover, the Court recognized that a state tort law remedy "may sometimes prove less generous than would a *Bivens* action," or forbid "recovery for emotional suffering unconnected with physical harm," and that "[s]tate-law remedies and a potential *Bivens* remedy need not be perfectly congruent" or "provide complete relief." <u>Id</u>., at 625 (citations omitted). Yet these obstacles did not leave Pollard without any remedy at all, and therefore they were no justification to extend *Bivens* and create a new implied federal cause of action.

The same is true in the instant case. Roberts contends that the Defendants were "deliberately indifferent to his safety" (Compl. ¶53.) and "deprived him of his right to be free from cruel and unusual punishment." (Compl. ¶ 59.) Although Roberts does not allege any physical injury, viewed in the light most favorable to Roberts, it appears that he is asserting an emotional injury as a result of the various conditions of his confinement of which he complains. *See, e.g.,* Compl. ¶ 51 (asserting that "as a result of the policies, practices, acts and omissions complained of herein," Roberts has suffered "psychological and emotional injuries."). As in *Minneci v. Pollard,* these types of injuries may be addressed through other alternative remedies. *See, e.g., SuperValu, Inc. v. Johnson*, 276 Va. 356, 369-370 (2008)(recognizing claim for intentional infliction of emotional distress under Virginia law). Because Roberts is not totally without any available alternative remedy, his complaint presents no grounds for extending *Bivens* to create liability for the Individual ICA Defendants, who are merely employees of a private detention facility.

Because the purpose of *Bivens* is to deter individual federal officers from committing constitution violations, "it is unclear how permitting a lawsuit against an individual who is not a federal officer could serve this purpose." *Holly v. Scott*, 434 F.3d 287, 291 (4th 2006). Indeed, the Court is "not free to ignore the importance of a party's private status in our constitutional scheme." *Id*. *Holly*, like the suit filed by Roberts, involved a claim by a prisoner who sued the warden and a doctor employed directly by a private corporation, the Geo Group, Inc., that operated the prison in which he was held. *Id*. at 288. In rejecting the plaintiff's claims in *Holly*, the Court emphasized the necessity that constitutional claims under § 1983 require some action under color of law, and that the liability of private persons does not extend to situations that do not involve the deprivation of a federal right fairly attributable to the government. *Id*., at 291-93. By observing this important limitation, courts "… maintain the *Bill of Rights* as a shield that protects private citizens from the

excesses of government, rather than as a sword that they may use to impose liability upon one another." *Id.*, at 292 (citing *Moose Lodge No. 107 v. Iris*, 407 U.S. 163 (1972). The Court in *Holly* observed that there "exists ample reason to be even more cautious about imputing liability to private actors under *Bivens* than under § 1983 because the *Bivens* cause of action is "a device of judicial creation." *Id*.

Roberts does not allege that the Individual ICA Defendants have acted or failed to act in any way that would constitute federal action. To the contrary, Roberts alleges that the "polices, practices, acts and omissions complained of herein are customs and usages of defendant, Immigration Center of America." (Compl. ¶11.) Roberts further bases his claims on the alleged failure by one or more of the Defendants to comply with the Performance Based National Detention Standards (PBNDS), which he alleges are a contractual obligation of ICA. (*See, e.g.*, Compl. ¶ 39.) Thus, the acts complained of by Roberts are based on the alleged failure of the defendants to act consistent with the standards the federal government has directed by contract. It cannot be said that the alleged conduct was in contravention of the standards the government directed by contract or are fairly attributable to the government. *See, e.g., Somie v. GEO Group, Inc*., 2011 U.S. Dist. LEXIS 118546 *14-15 (E.D.N.C. 2011)(dismissing *Bivens* claim, and noting that rather than directing GEO Group, Inc.'s alleged violation of plaintiff's religious freedom, the government actually directed that GEO Group implement programs that complied with the First Amendment and federal law). The same is true in this case as evidenced by Roberts' allegations referencing and relying upon the PBNDS. The alleged actions of the Individual ICA Defendants, like those of the employees of the GEO Group, Inc. in *Holly*, are "not of a sufficiently federal character to create constitutional liability." *Holly*, 434 F.3d at 292.

For all the foregoing reasons, Roberts' Complaint fails to state a *Bivens* claim against the Individual ICA Defendants, and his claims against each of them must be dismissed.

### 3. Roberts' claims for injunctive relief are moot.

As set forth above, Roberts has no claim for damages under the 14th Amendment, 42 U.S.C. § 1983, or *Bivens*. To the extent Roberts has any right to seek an injunction, that claim is now moot because Roberts has been transferred to the Virginia Peninsula Regional Jail, in Williamsburg, Virginia.[2] Thus, Roberts is no longer subjected to the conditions at ICA's facility in Farmville, Virginia, of which he has complained. *See Fore v. Godwin*, 407 F. Supp. 1145, 1147 (E.D. Va. 1976) (Merhige, J.)(Remaining claims for injunction by prisoners challenging conditions of confinement were moot due to prisoners transfer to a different facility).

In *Somie v. Geo Group, Inc.*, 2012 U.S. Dist. LEXIS 63708 (E.D.N.C.), a case similar to the current suit, the district court dismissed as moot a plaintiff - prisoner's claim for declaratory and injunctive relief. There, one of the plaintiffs, Malcolm, was transferred to a different facility, and ultimately released from custody prior to a decision on a motion to dismiss his second amended complaint seeking an injunction and declaratory relief that his denial of a kosher meal was a violation of his First Amendment right to free exercise of religion, and of the Religious Freedom Restoration Act. *Id*. at *12-13 ("Generally, an inmate's transfer or release from a particular prison moots his claims for injunctive or declaratory relief with respect to his incarceration there.") (Citing *Incumaa v. Ozmint,* 507 F.3d 281, 286-87 (4th Cir. 2007); *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991); *See also Rendlemen v. Rouse*, 569 F.3d 182 (4th Cir. 2009) (same)

---

[2] S*ee, e.g*., Plaintiff's First Set of Interrogatories and Requests for Production of Documents (Doc. No. 10), which identify Roberts' current address as VPRJ B1-109, 9320 Merrimac Trail, Williamsburg, Virginia, and provide Plaintiff's inmate identification number, 134796.

Accordingly, to the extent Roberts had some claim for injunctive or declaratory relief, whether under the Constitution or RLUIP, such claims are necessarily moot at this time, and must be dismissed.

4. Roberts' claims under the RLUIPA fail as a matter of law.

RLUIPA does not apply to this case. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. 1997)[3].... " *See* 42 U.S.C. § § 2000cc-1. "Government" for purposes of RLUIPA is defined in part as:

Government. The term "government"--

(A) means--
  (i) a State, county, municipality, or other governmental entity created under the authority of a State;
  (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
  (iii) any other person acting under color of State law …

42 U.S.C. § 2000cc-5(4)(A).

Accordingly, RLUIPA only applies when there is some degree of state action, or action under color of state law. As described above, there is no state action here, where the defendants are a private company and its employees, and Roberts makes no allegation, nor could he, that ICA's contractual relationship with a federal government entity amounts to state action.

5. Roberts has no claim under the RFRA.

---

[3] Section 2 of 42 USC § 1997 states that "Privately owned and operated facilities shall not be deemed "institutions" under this Act if - (A) the licensing of such facility by the State constitutes the sole nexus between such facility and such State; and [generally, if the facility's receipt of federal funds is solely due to receipt of social security payments on behalf of persons residing there.] Roberts makes no allegation sufficient to bring ICA, a totally private facility within the definition of "institution" for purposes of RLUIPA.

Although he asserts no such claim, to the extent the Court treats Roberts' Complaint as asserting a claim under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., ("RFRA"), such a claim must also fail.

Under the RFRA, "the government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it "demonstrates that application of the burden to the person-- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a-b). Under the RFRA, "government" is defined to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States…" 42 U.S.C. § 2000bb-2(1).

Roberts does not allege that any of the Defendants meet this definition of government bringing them within the reach of the RFRA, nor could he. Defendants are a private entity and its employees, and there are no allegations that their alleged acts or omission in violation of Roberts' free exercise of religion were under color of law of the United States. Indeed, as described above, the conduct of the Defendants in denying Roberts a proper kosher meal, were, by Roberts' own allegations, contrary to the PBNDS called for by the government in its contract with ICA. Therefore, it cannot be said that the Defendants' acts were undertaken at the direction of the government, or in furtherance of government policy. As in *Holly v. Scott*, and *Somie v. GEO Group, Inc.*, 2011 U.S. Dist. LEXIS 118546 (E.D.N.C. 2011), the Defendants are not government actors, but a private company and its employees. There are no allegations suggesting that federal policy played a part in the Defendants' alleged conduct and no allegations of facts from which the Court might infer collusion between the Defendants and the Government in violation of Roberts' rights. *Cf. Holly*, 434 F.3d at 292-93 (finding alleged conduct of insufficient federal character to impose

liability for the same reasons). Roberts' own Complaint indicates that without any involvement by the government, he was placed on ICA's common fare meal plan upon his request, and that he was subsequently removed from it upon his request. (Compl. ¶¶ 38, 43.)

Roberts has failed to allege any government action to support a violation of the RFRA, and he therefore has no claims under the RFRA.

### 6. Roberts's indiscriminate allegations fail to state his claims.

Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94, "even a *pro se* plaintiff must clear the modest hurdle of stating a plausible claim showing entitlement to relief." *Grenadier v. BWW Law Group*, No. 1:14cv827, 2015 U.S. Dist. LEXIS 11418, at *11 (E.D. Va. Jan. 30, 2015) (citations omitted). In this vein, this Court has previously dismissed as implausible allegations against multiple defendants where it is unclear against whom each allegation is levied. *Id.* ("[A]llegations of wrongdoing attributed to multiple defendants collectively may decrease the plausibility of the allegations when reviewed specifically in reference to individual defendants.") (citations omitted); *Alliance Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12cv701, 2013 U.S. Dist. LEXIS 4708, at *3 (E.D. Va. Jan. 11, 2013) ("In the Complaint now under review, many of the omnibus allegations against 'the Defendants' are conclusory, meriting minimal credit. . . . [T]he Court must remain mindful of the indiscriminate character of those allegations against the 'Defendants.' While such pleading is not prohibited per se, it impacts the Court's plausibility analysis . . .").

Here, the allegations in the Complaint amount to nothing more than a listing of various defendants, such as ICA and its employees, followed by mostly conclusory allegations related to the conditions of Plaintiff's confinement. It is implausible to conclude that all of those indiscriminately-identified "Defendants" together engaged in the alleged conduct. With the exception of defendant

Robert Wooten, Roberts makes no specific allegations of conduct attributable to any of the Individual ICA Defendants. Roberts has failed to adequate allege facts to support his claims against any individual as a result of his indiscriminate, group pleading.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss all claims against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: January 8, 2016

Respectfully Submitted,

IMMIGRATION CENTER OF
AMERICA, LLC,
JEFFERY CRAWFORD,
REBECCA JACKSON,
RUSSELL B. HARPER,
KEN NEWSOME,
WARREN COLEMAN,
ROBERT WOOTEN,
MABEL LOGAN, AND
DOUGLAS KINGERY


_/s/_
Edward E. Bagnell, Jr. (VSB No. 74647)
ebagnell@spottsfain.com
John M. Erbach (VSB # 76695)
jerbach@spottsfain.com
SPOTTS FAIN P.C.
411 E. Franklin Street, Suite 600
Richmond, VA  23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

  I certify that on the 8th day of January, 2016, I will electronically file the foregoing Notice with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record, and I further certify that on the 8th day of January, 2016, I sent a copy of the foregoing by U.S. Mail to Plaintiff at the following address:

  Ken Roberts, #134796
  VPRJ B1-109
  9320 Merrimac Trail
  Williamsburg, Virginia 23185

              /s/
            Edward E. Bagnell, Jr. (VSB No. 74647)
            ebagnell@spottsfain.com
            John M. Erbach (VSB # 76695)
            jerbach@spottsfain.com
            SPOTTS FAIN P.C.
            411 E. Franklin Street, Suite 600
            Richmond, VA  23219
            Telephone: (804) 697-2000
            Facsimile: (804) 697-2100
            *Counsel for Defendants*